UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MICHAEL P. GILBROOK, SR.,

       Petitioner,

v.                                     CASE NO. 5:10-cv-355-Oc-10TBS

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

       Respondents.
_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases for the United States District Courts* (Doc. No. 13). Petitioner filed a reply to the response (Doc. No. 17). Upon due consideration of the petition, the response, the reply, and the state court record, the Court concludes that the petition must be denied.[1]

### I.   *Procedural History*

Petitioner was charged by second amended information with two counts of felony battery (counts one and five) and three counts of aggravated assault with a deadly weapon

---

[1]Because the Court may resolve the petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions under Section 2254.

(counts two, three, and four) (App. B at 1-2).[2]  Prior to trial, defense counsel, an assistant public defender, moved to withdraw as counsel citing a conflict because the Office of the Public Defender had previously represented State witness Eddie Mills.  *Id.* at 20-21.  The trial court granted the motion to withdraw and appointed substitute counsel.  *Id.* at 22.  Substitute counsel subsequently moved to withdraw from representation because Petitioner had obtained private counsel.  *Id.* at 53  The trial court also granted that motion.  *Id.* at 54.  On August 21, 2006, defense counsel Gregory E. Tucci ("Tucci") moved to withdraw from representation after learning that Petitioner had filed a bar complaint against him.  *Id.* at 60.  After holding a *Faretta*[3] hearing (App. OO), the trial court granted Tucci's motion to withdraw and allowed Petitioner to represent himself (App. OO at 8; App. B at 83).

Trial commenced on November 13, 2006, at which time the trial court noted that Syed Qadri ("Qadri") was acting as standby counsel (App. C at 4).  Although Qadri worked for the Office of the Public Defender, this fact was not noted on the record.  *Id.*  Petitioner advised the trial court that he still wished to represent himself.  *Id.* at 4, 7-8.  Thereafter, on November 16, 2006, the second day of trial, Petitioner requested that Qadri be allowed to represent him for the remainder of the trial.  *Id.* at 51-52.  Again, the record does not reflect whether Petitioner was aware that Qadri worked for the Office of the Public Defender.  *Id.*  The trial court granted Petitioner's request and appointed Qadri as defense counsel.  *Id.* at 52.[4]  After the defense rested, the trial court granted Petitioner's motion for judgment of

---

[2]Unless otherwise noted, referenced appendices refer to exhibits in Respondents' Appendix filed on December 6, 2010 (Doc. No. 14).

[3]*Faretta v. California*, 422 U.S. 806 (1975).

[4]The same trial court judge who previously granted the Office of the Public Defender's motion to withdraw presided over the trial proceedings.

acquittal as to count four. *Id.* at 224. Petitioner was convicted as charged of counts one, two, three, and five. *Id.* at 284. The trial court sentenced Petitioner to five-year terms of imprisonment for each count, with the sentence in counts one, two, and three to run consecutively (App. D at 12). Petitioner appealed, raising one ground for relief (App. E). The Fifth District Court of Appeal *per curiam* affirmed (App. G).

Petitioner filed a petition for writ of habeas corpus with the Fifth District Court of Appeal alleging ineffective assistance of appellate counsel (App. H). The appellate court denied the petition without discussion (App. I). Petitioner subsequently filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure in which he alleged eleven grounds for relief (App. L). The trial court entered an order striking grounds one and three of the Rule 3.850 motion with leave to amend and summarily denied the remaining claims (App. M). Petitioner then filed an amended Rule 3.850 motion for post-conviction relief raising the two grounds that had been stricken from his prior motion (App. N). The trial court summarily denied the claims on the merits (App. O). Petitioner appealed both of the trial court's orders of denial (App. R). The Fifth District Court of Appeal *per curiam* affirmed the lower court's denial of his claims (App. S).

Petitioner also filed a Rule 3.800(a) motion in which he complained of a scoresheet error (App. U). The trial court denied the motion finding that although there was a scoresheet error, Petitioner nonetheless would have received the same sentence (App. V). Petitioner appealed (App. Y), and the appellate court affirmed *per curiam* (App. Z). Petitioner filed a second Rule 3.800(a) motion (App. AA), which was denied (App. BB). On appeal, the Fifth District Court of Appeal affirmed *per curiam* (App. CC).

Finally, Petitioner filed another Rule 3.850 motion for post-conviction relief (App.

DD).  The trial court denied the motion as successive (App. EE). Petitioner appealed (App. HH), and the Fifth District Court of Appeal affirmed *per curiam* (App. II).  Petitioner also filed a second petition for writ of habeas corpus alleging ineffective assistance of appellate counsel (App. JJ). The Fifth District Court of Appeal dismissed the petition (App. KK).  The instant federal petition for writ of habeas corpus alleging nine grounds for relief follows (Doc. No. 1).

## II.    Legal Standards

### A.    Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See Brown v. Patton*, 544 U.S. 133, 141 (2005); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  *Ferguson v. Calliper*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  "[T]o be 'contrary to' clearly established federal law,

the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (internal quotations and citation omitted); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.

### B.    *Standard for Ineffective Assistance of Counsel*

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). *Newland v. Hall*, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. *Newland*, 527 F.3d at 1184. In *Strickland*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his

counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[5]  *Strickland*, 466 U.S. at 687-88; *see also Bobby Van Hook*, 130 S. Ct. 13, 16 (2009).  A habeas court's review of a claim under the *Strickland* standard is "doubly deferential."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayanze*, 129 S. Ct. 1411, 1420 (2009) (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices."  *Bobby Van Hook*, 130 S. Ct. at 17 (internal quotations and citations omitted).   It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable."  *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct,"  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.  *Id.*  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  An attorney is not ineffective for failing to raise or preserve a meritless issue. *Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir. 1989); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992)

---

[5]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

## III.   Analysis

### A.   Claim One

Petitioner claims he was denied his Sixth Amendment right to conflict-free counsel when the trial court allowed Assistant Public Defender Qadri to represent him despite the fact that the Office of the Public Defendant had earlier withdrawn from representation due to a conflict of interest (Doc. No. 1 at 8). The Marion County Public Defender's Office withdrew from the case because it had represented State witness Mills in 2002 (App. B at 53). Petitioner states that the trial court failed to determine whether Petitioner had waived the conflict before allowing Qadri to represent him. *Id.* at 9. Petitioner raised this claim on direct appeal (App. E). The Fifth District Court of Appeal rejected this claim and affirmed *per curiam* without discussion (App. G).

"The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel." *Ferrell v. Hall*, 640 F.3d 1199, 1240 (11th Cir. 2011) (citing *Strickland*, 466 U.S. at 686 and *Hamilton v. Ford*, 969 F.2d 1006, 1011 (11th Cir. 1992) ("when counsel is burdened with a conflict of interest, she 'breaches the duty of loyalty, perhaps the most basic of counsel's duties' and has therefore failed to provide effective

assistance of counsel.")).  When there is a timely objection at trial because of a conflict of interest, and the trial court fails to appoint separate counsel or adequately inquire into the alleged conflict, the error is fundamental and reversal is automatic.  *Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173 (1978); *Ferrell*, 640 F.3d at 1240 (citing *Hamilton*, 969 F.2d at 1012).

First, the Court notes that it is unclear whether Petitioner was aware that Qadri worked for the Office of the Public Defender as this fact was never stated on the record during the trial proceedings.  As such, Petitioner did not object to Qadri's representation of him at trial.  Because Petitioner failed to object, he was not entitled to automatic reversal due to the trial court's failure to inquire into the conflict of interest; he must demonstrate prejudice under *Strickland v. Washington*,  466 U.S. 668 (1984).  But Petitioner cannot show that the trial court's failure to address whether defense counsel had a conflict of interest was fundamental error.  In Florida, the public defender's office is the functional equivalent of a law firm, and different attorneys in the same public defender's office cannot represent defendants with conflicting interests. *Mungin v. State*, 932 So. 2d 986, 1001 (Fla. 2006).  To show a violation of the right to conflict-free counsel, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335 (1980).  To demonstrate an actual conflict, a defendant must show that counsel actively represented conflicting interests and identify specific portions of the record that suggest that his interests were compromised.  *Id.*

The record in this case does not establish that the Marion County Public Defender's Office concurrently represented Petitioner and Mills.  Thus, there was no actual conflict because Qadri was not actively representing clients with competing interests; the Public

Defender's Office represented Mills in an unrelated case in 2002. Moreover, there is no indication that Qadri was the attorney who represented Mills. Because Mills was represented approximately four years prior to Petitioner's trial, in an unrelated matter, there is no indication that an actual conflict of interest arose in this case. Even if Petitioner had established an actual conflict of interest, Petitioner failed to demonstrate that such a conflict adversely affected his attorney's representation. Petitioner does not allege that Qadri was aware of the Public Defender Office's prior representation or was prevented from adequately cross-examining Mills, nor is there any indication of this in the record. *See Hunter v. State*, 817 So. 2d 786, 793 (Fla. 2002).

Petitioner has not shown that his Sixth Amendment right to counsel was violated due to a conflict of interest. The state court's determination of this claim was not contrary to, nor did it result in an unreasonable application of, clearly established federal law. As such, claim one is denied pursuant to § 2254(d).

### B.    Claim Two

Petitioner claims that appellate counsel was ineffective for failing to argue on appeal the issue of whether the trial court erred when it denied counsel's request for a continuance (Doc. No. 1 at 11). Petitioner maintains that after Qadri was appointed to represent him, he attempted to obtain a continuance because he did not have enough time to prepare for trial. *Id.* at 12. Petitioner contends that the trial court abused its discretion by not allowing Qadri an opportunity to effectively prepare the case. *Id.* Petitioner raised this claim in his first petition for writ of habeas corpus filed with the Fifth District Court of Appeal (App. H). The appellate court denied the claim without discussion (App. I).

Claims of ineffective assistance of appellate counsel are governed by the same

standards applied to trial counsel under *Strickland*. *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). Appellate counsel need not brief issues reasonably considered to be without merit. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984). Appellate counsel must be allowed to exercise his or her reasonable professional judgment in selecting those issues most promising for review, and "[a] brief that raises every colorable issue runs the risk of burying good arguments." *Jones v. Barnes*, 463 U.S. 745, 753 (1983). In order to establish prejudice, the Court must first review the merits of the omitted claim. *See Heath*, 941 F.2d at 1132. Counsel's performance will be deemed prejudicial if the Court finds that "the neglected claim would have a reasonable probability of success on appeal." *Id.*

Petitioner has not demonstrated that had appellate counsel raised this claim on appeal that it would have been successful. On the morning of trial, after Qadri was appointed to represent Petitioner, he moved for a mistrial stating "Mr. Gilbrook will be receiving ineffective assistance of counsel" because he had just received the case that morning (App. C at 57). The Court denied the motion for mistrial. Qadri did not move for a continuance at any point, therefore the issue of whether the trial court erred in denying a continuance was not preserved for appellate review. *See Harrell*, 894 So. 2d at 940; *Armstrong*, 642 So. 2d at 740. Therefore, appellate counsel did not act deficiently in failing to raise this claim on direct appeal.

Even if counsel's argument to the trial court could be construed as requesting a continuance, and thus preserving the issue for direct appeal, there is no indication that the instant claim would have been meritorious. Florida appellate courts review a trial court's denial of a motion for continuance for an abuse of discretion. *Alvarez v. State*, 75 So. 3d

10

420, 422 (Fla. 4th DCA 2011). Although "criminal defendants have the right to a reasonable opportunity to select and be represented by chosen counsel, and the right to a preparation period sufficient to assure at least a minimal quality of counsel, the right is not absolute but at some point must bend before countervailing interests involving the effective administration of the courts." *Lawson v. State*, 884 So. 2d 540, 545 (Fla. 4th DCA 2004) (quoting *McKay v. State*, 504 So. 2d 1280, 1282 (Fla. 1st DCA 1986)). Moreover, when a criminal defendant seeks a continuance "on the eve of trial in order to allow time for recently obtained counsel to prepare, the court must balance that request against many other factors" such as (1) the time available for preparation; (2) the likelihood of prejudice from the denial; (3) the defendant's role in shortening the preparation time; (4) the complexity of the case; (5) the availability of discovery; (6) the adequacy of counsel actually provided; and (7) the skill and expertise of chosen counsel and his pre-retention experience with either the defendant or the alleged crime. *Id.* at 545-46; *see also Trocola v. State*, 867 So. 2d 1229, 1231 (Fla. 5th DCA 2004).

In May 2005, the trial court appointed substitute counsel after the public defender withdrew from the case (App. B at 22-23). On December 12, 2005, substitute counsel moved to withdraw because Petitioner had obtained private counsel. *Id.* at 53. On August 21, 2006, private counsel moved to withdraw because Petitioner had filed a bar complaint against him. *Id.* at 60. On August 31, 2006, the trial court granted the motion to withdraw and allowed Petitioner to represent himself (App. OO). Petitioner represented himself during voir dire on the first day of trial, November 13, 2006 (App. C). However, on the second day of trial, November 16, 2006, Petitioner asked that standby counsel be appointed to represent him. *Id.* at 50.

11

In *Lawson*, the appellate court affirmed the denial of a motion for continuance, finding the defendant had delayed commencement of his trial on multiple occasions by discharging one attorney and causing another to withdraw. 884 So. 2d at 546. The court stated that had the defendant not manipulated the judicial system, there would have been ample time for counsel to prepare for trial. *Id.* Similar to *Lawson*, in the instant case Petitioner delayed commencement of his trial by discharging his attorney and causing his private attorney to withdraw from the case. Then, on the morning of trial, after a jury had been selected, Petitioner decided that he no longer wished to represent himself. Because Petitioner's own actions were the cause of the lack of adequate preparation time, there is no indication that the trial court's denial of a continuance was an abuse of discretion.

The Court finds that appellate counsel did not act deficiently in failing to raise this claim, nor did counsel's actions result in prejudice because there is no reasonable probability that the neglected claim would have been successful on appeal. As such, the state court's determination of this claim was not contrary to, nor did it result in an unreasonable application of, clearly established federal law. Accordingly, claim two is denied.

### C. Claim Three

Petitioner claims that appellate counsel was ineffective for failing to supplement the record on appeal and raise the issue that he received a vindictive sentence (Doc. No. 1 at 13). In support of this claim, Petitioner argues that appellate counsel should have obtained transcripts from a November 16, 2005 hearing at which the trial court discussed the plea offered by the State. *Id.* at 15. Petitioner claims that these transcripts demonstrated that he received a vindictive sentence merely for exercising his right to trial. *Id.* Petitioner

contends that appellate counsel should have filed a Rule 3.800(b)(2) motion arguing that his sentence was vindictive in order to preserve the issue so that it could then be raised on direct appeal. *Id.* at 14.

Respondents argue that the instant claim is procedurally barred because the Fifth District Court of Appeal dismissed Petitioner's second state habeas petition as successive. The record indicates that the appellate court dismissed the state habeas petition on October 29, 2009 without discussion (App. KK). Rule 9.141(5)(c) of the Florida Rules of Appellate Procedure provides that "[t]he court may dismiss a second or successive petition if it does not allege new grounds and the prior determination was on the merits, or if a failure to assert the grounds was an abuse of procedure." Petitioner raised the instant claim in a successive state habeas petition and the state court dismissed it. Therefore, the instant claim is procedurally barred. *See Price v. Sec'y, Dep't of Corr.*, No. 6:09-cv-1061-Orl-35GJK, 2011 WL 2561246, at *13 (M.D. Fla. June 28, 2011) (finding the Court was barred from reviewing a claim raised in successive state habeas petition that was dismissed by the appellate court).

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense, in light of the new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

Petitioner has neither alleged nor shown cause or prejudice that would excuse any procedural default. Likewise, he has not shown the applicability of the actual innocence exception. A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, the Court will not consider Petitioner's claim.

Alternatively, to the extent that the Fifth District Court of Appeal did not dismiss Petitioner's second state habeas petition as successive, but instead considered and rejected the claim on the merits, the Court finds the instant claim would not be procedurally barred. However, Petitioner has not demonstrated that he is entitled to relief on the merits of his claim. There is no indication that the trial court acted in a vindictive manner in sentencing Petitioner to three consecutive five-year terms of imprisonment.

Prior to trial, the State offered Petitioner a negotiated plea wherein he would plead guilty to counts three and four in exchange for a sentence of 50.025 months in prison (App.

14

OO at 20).  The trial court was not a party to that plea negotiation.  Petitioner rejected the

State's offer on more than one occasion (App. OO and PP).  On November 13, 2006, the

State noted again that it had offered Petitioner 50.025 months and Petitioner rejected this

negotiated plea (App. CC at 12-13).  Petitioner was advised that this offer was no longer

"on the table." *Id.* at 14.  The trial court also told Petitioner that if he wanted to enter a plea,

he would likely be sentenced to 72.375 months in prison.  *Id.* at 13.  The court noted that

it did not know much about the facts of the case and did not know the circumstances of his

prior offenses.  *Id.*  Petitioner proceeded to trial instead of entering a plea.  *Id.*

At the sentencing hearing, the trial court noted that although prior to trial it was

inclined to impose a sentence of  72.375 months, at that time it "did not have the benefit

of having heard the evidence and view the evidence" (App. D at 11).  The trial court further

stated the following:

> I was not aware at the time of the severity of the injury inflicted to MaKayla
> [sic] Taylor including the broken collarbone, the injury to the shoulder area,
> and the hematoma to the head.  I also did not have the benefit at that time
> of knowing how those injuries were inflicted by the stomping with boots.

*Id.*

An accused may not be subjected to more severe punishment for exercising his

constitutional right to stand trial.  *See North Carolina v. Pearce*, 395 U.S. 711 (1969);

*United States v. Jackson*, 390 U.S. 570 (1968).  In *Alabama v. Smith*, 490, U.S. 794, 799

(1989), the Supreme Court of the United States qualified *Pearce* and limited its application

to circumstances "in which there is a 'reasonable likelihood' of vindictiveness." (quotation

omitted).  "The imposition of a longer sentence than a defendant would have received had

he pleaded guilty does not automatically amount to punishment for the defendant's

exercising his right to stand trial." *Leon v. Secretary, Dept. of Corr.*, No. 8:09-cv-1410-T-17MAP, 2010 WL 3467128, at *11 (M.D. Fla. Aug. 31, 2010) (citing *Bordenkircher v. Hayes*, 434 US. 357 (1978); *Frank v. Blackburn*, 646 F.2d 873, 882-83 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981)). "A trial judge may reasonably increase a defendant's sentence after trial because the trial gives the judge the benefit of hearing testimony, becoming aware of the facts of the case, and understanding 'the flavor of the event and the impact upon any victims.'" *Id.* (quoting *Frank*, 646 F.2d at 885).

There is no indication that the trial court imposed three consecutive terms of five years in prison in order to punish Petitioner for exercising his right to stand trial. The trial judge noted that he was imposing the consecutive sentences because after hearing the facts of the case and understanding the severity of the victim's injuries, such a sentence was warranted. Review of the record reveals no indication that the trial judge acted in a vindictive manner when imposing Petitioner's sentence. Petitioner has not shown that appellate counsel acted deficiently by failing to raise this claim on direct appeal or that any such deficiency resulted in prejudice because the claim did not have a reasonable probability of success on appeal. Petitioner has failed to meet his burden of proving that the state court's decision was contrary to, or resulted in an unreasonable application of, federal law, nor was it an unreasonable determination in light of the facts presented. Therefore, claim three is denied pursuant to § 2254(d).

### D. Claim Four

In his fourth claim, Petitioner asserts that trial counsel was ineffective for failing to impeach the testimony of three State witnesses. Petitioner states that counsel should have

16

impeached witness/victims Michaela Taylor ("Taylor"), Eddie Mills ("Mills"), and Scott

Kurmas ("Kurmas") with their deposition testimony because their testimony at trial

conflicted with their depositions, with each other, and with the police reports and written

statements (Doc. No. 1 at 17). Petitioner raised this claim in his Rule 3.850 motion for

post-conviction relief (App. L). The trial court summarily denied the claim, stating the

following:

> The Court specifically found at the sentencing hearing that Mr. Qadri's performance as Defendant's counsel was not deficient. *See attached Sentencing transcript* pp. 7-8. The Court also finds that were there to be any deficiency in counsel's representation it would have only been as a result of Defendant's attempt to delay the proceedings. The exercise of a defendant's right to self-representation "is not license to abuse the dignity of the court or to frustrate orderly proceedings, and a defendant may not manipulate the proceedings by willy-nilly leaping back and forth between the choices." *Jones v. State*, 449 So. 2d 253, 259 (Fla. 1984), *cert. denied*, 469 U.S. 893 (1984); *see also State v. Roberts*, 677 So. 2d 264, 266 (Fla. 1996); *Morgan v. State*, 33 Fla. L. Weekly D 2335 (Fla. 4th DCA Oct. 1, 2008) (It is within the trial court's discretion to conclude that a defendant is trying to manipulate the system by asserting and waiving his right to self-representation). If the Court were to entertain claims such as these, it would encourage cunning defendants to waive their right to counsel and proceed pro se, all the while planning to relinquish the waiver at trial and thereby claim ineffective assistance of counsel with respect to their then appoint[ed] counsel. Defendant was offered numerous times to have counsel appointed prior to trial but chose to have counsel appointed on the second day of trial. Accordingly, the Court denies Defendant's claims of ineffective assistance of counsel.

(App. M at 4-5). The Fifth District Court of Appeal affirmed *per curiam* (App. S).

The Court finds that Petitioner's claim is refuted by the record. First, the Court notes

that defense counsel did impeach both Mills and Taylor with their deposition testimony

(App. C at 109-10, 122, 128). Although defense counsel did not impeach Kurmas with his

deposition testimony, counsel thoroughly cross-examined Kurmas. *Id.* at 87-94.

Furthermore, to the extent that counsel did act deficiently, Petitioner cannot demonstrate

that counsel's actions resulted in prejudice. During cross-examination of each of these witnesses, defense counsel pointed out numerous inconsistencies between their stories. Petitioner has not stated what other questions defense counsel should have asked or how counsel should have further impeached the witnesses.

While Petitioner is correct in stating that the witnesses stories were somewhat inconsistent with each other, Taylor adamantly maintained that Petitioner beat her and broke her collar bone. *Id.* at 115. Kurmas and Mills testified that when they picked Taylor up she had black eyes, complained of a collar bone injury, and had an injured shoulder. *Id.* at 80, 98. Moreover, all three witnesses testified that after Kurmas picked Taylor up, Petitioner followed the vehicle in his truck. *Id.* at 81, 99. Kurmas stopped his vehicle at Henry Bosier's house in order to call 911 because he was not getting cell phone reception. *Id.* at 81. Petitioner arrived at Bosier's house minutes later, at which time he grabbed Taylor and tried to force her into his truck. *Id.* at 81, 100-01, 117. Kurmas pulled Petitioner away from Taylor, threw him to the ground, and hit him in the face several times. *Id.* at 82, 101, 117. Kurmas, Mills, and Taylor left Bosier's house, drove around the neighborhood and tried to hide from Petitioner. *Id.* at 83-84, 101, 117. Petitioner followed them in his vehicle and rammed his truck into the side of Kurmas' vehicle three times. *Id.* at 84-85, 101-03, 117. Mills and Taylor ran from Kurmas' vehicle and hid in the woods, and Petitioner left. *Id.* at 85, 103, 118. Taylor admitted that she had also done cocaine on February 18, 2005. *Id.* at 115.

It is not clear how additional impeachment of the witnesses would have changed the outcome of trial. There was ample evidence submitted at trial to suggest that Petitioner committed felony battery and aggravated assault with a deadly weapon. Petitioner has not

shown that the trial court's determination of this claim was contrary to, or resulted in an

unreasonable application of, clearly established federal law. Accordingly, claim four is

denied pursuant to § 2254(d).[6]

---

[6]To the extent that Petitioner alleges that trial counsel failed to defend against charges, resulting in the functional equivalent of a guilty plea pursuant to *United States v. Cronic*, 466 U.S. 648, 659 (1984) (finding the failure to subject the State's case to meaningful adversarial testing results in a presumptively unreliable process and thus, prejudice is presumed), the Court finds this claim without merit. The Court notes that trial counsel presented opening arguments, thoroughly cross-examined the State's witnesses, successfully argued a motion for judgment of acquittal as to one of the counts, presented defense witnesses, and made closing arguments. There is no indication that defense counsel failed to subject the State's case to meaningful adversarial testing. As such, Petitioner has not demonstrated that trial counsel's action resulted in the functional equivalent of a guilty plea.

### E. Claim Five

Petitioner claims that trial counsel was ineffective for failing to call his son, Michael Gilbrook, Jr., as a witness at trial. Petitioner maintains that his son would have testified that he drove Taylor to a house after she and his father had gotten into an argument and later drove Petitioner around the area to find Taylor (Doc. No. 1 at 19). Moreover, Petitioner asserts that his son would testify that Kurmas attacked Petitioner and also observed Kurmas' vehicle hit a concrete barrier, which is how Taylor sustained her injuries. *Id.* Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. L). The trial court summarily denied the claim, finding that any deficiency on the part of counsel was the result Petitioner's actions of discharging counsel, causing another attorney to move to withdraw, exercise his right to represent himself and not asking for counsel until the morning of trial (App. M). The Fifth District Court of Appeal affirmed *per curiam* (App. S).

"[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted); *Wright v. Sec'y, Dep't of Corr.*, No. 6:08-cv-618-Orl-35DAB, 2009 WL 5176558, at *3 (M.D. Fla. Dec. 23, 2009). Petitioner's claim that trial counsel was ineffective for failing to call Gilbrook, Jr., as a witness is speculative because Petitioner has not presented an affidavit from this witness. Therefore, Petitioner has not made the requisite factual showing, and his self-serving speculation will not sustain a claim of ineffective assistance of counsel.

Additionally, the Court notes that counsel's failure to call Gilbrook, Jr. as a witness did not result in prejudice as his testimony would have merely been cumulative. Taylor testified that after she and Petitioner had gotten into an argument and Petitioner hit her, Gilbrook, Jr., drove her to someone's house so that she could use a phone (App. C at 116). Moreover, Mills testified that after Petitioner followed them to Bosier's house, he noticed that Gilbrook, Jr. was with his father and witnessed Kurmas hitting Petitioner. *Id.* 101. While Petitioner testified that Kurmas hit him with a two by four piece of wood, Kurmas testified that he hit Petitioner with his fist. Even though defense witness David Wilson also testified that Mills told him Petitioner was hit with a two by four, Gilbrook, Jr.'s additional testimony that Petitioner was hit with a two by four would not have resulted in a different outcome because Kurmas did admit to hitting Petitioner several times.

Furthermore, although Petitioner testified at trial that Kurmas' vehicle hit a concrete barrier, the other witnesses denied that Kurmas' vehicle hit this barrier and both Mills and Kurmas testified that Taylor was injured when they picked her up and before any alleged accident took place. *Id.* at 80, 98, 115, and 134. Therefore, it is unlikely that Gilbrook, Jr.'s testimony would have been helpful to the defense. Petitioner has not demonstrated that the state court's determination of this claim was contrary to, or resulted in an unreasonable determination of, clearly established federal law or resulted in an unreasonable determination of the facts in light of the evidence presented. As such, claim six is denied pursuant to § 2254(d).

### F. Claim Six

Petitioner claims that trial counsel was ineffective for failing to question him at trial as they had agreed upon. Petitioner argues that he had agreed with counsel that he should be questioned during direct examination about his prior arrests and convictions because he wanted the jury to understand that he openly admitted to those arrests and convictions because he was guilty of those charges but was not guilty of the pending charges (Doc. No. 1 at 21). Petitioner states that counsel failure to question him in this manner resulted in prejudice. *Id.* at 22.

Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. L). The trial court summarily denied the claim, finding that any deficiency on the part of counsel was the result Petitioner's actions of discharging counsel, causing another attorney to move to withdraw, exercise his right to represent himself and not asking for counsel until the morning of trial (App. M). The Fifth District Court of Appeal affirmed *per curiam* (App. S).

Petitioner has not demonstrated that he is entitled to relief on this claim. The State did not impeach Petitioner with any prior arrests or prior convictions during cross-examination. Therefore, defense counsel was not deficient for failing to question Petitioner about his prior arrests or convictions during direct examination. Additionally, no prejudice resulted from counsel's alleged deficiency because the jury never heard that Petitioner had any prior arrests or convictions. The state court's determination of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, claim six is denied pursuant to § 2254(d).

### G. Claim Seven

In his seventh claim Petitioner alleges that trial counsel was ineffective for failing to object to the trial court's failure to issue a curative jury instruction. Petitioner argues that counsel failed to include standard jury instruction 2.5, in which the trial court is required to advise the jury that when they hear a defendant has been convicted of a crime, they should only consider that evidence when weighing the credibility of a defendant's testimony and not for any other purpose (Doc. No. 1 at 23-24); *see* Fla. Std. Jury Instr. (Crim) 2.5. Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. L). The trial court summarily denied this claim, finding any deficiency on the part of counsel was the result Petitioner's actions with respect to discharging counsel prior to trial and then asking for reappointment of counsel on the morning of trial (App. M). The Fifth District Court of Appeal affirmed *per curiam* (App. S).

The instant claim is without merit. As the Court discussed above, Petitioner did not testify that he had been convicted of a crime. Thus, defense counsel did not act deficiently when he failed to ask for this standard jury instruction because there was no need for such an instruction. Petitioner has not demonstrated that the state court's determination of this claim was contrary to, or resulted in an unreasonable application of, clearly established federal law. Accordingly, claim seven is denied pursuant to § 2254(d).

### H.    *Claim Eight*

Petitioner claims that trial counsel was ineffective during closing argument (Doc. No. 1 at 25-26). In support of this claim, Petitioner points to defense counsel's statement during sentencing in which he stated the following:

> But, Your Honor, I would also like to point out for mitigating purposes that although Your Honor feels that I tried this case as best as I could, I -- in my closing argument, I believe it was somewhat obvious I was sort of spacing

out because I couldn't remember all the facts in this case because I had just received this case yesterday morning. I believe that was detrimental to Mr. Gilbrook receiving effective representation in this case.

(App. D at 6). Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. L). The trial court summarily denied the instant claim, finding any deficiency on the part of defense counsel was due to Petitioner's actions with respect to discharging counsel and then asking for appointment of counsel on the morning of trial (App. M). The Fifth District Court of Appeal affirmed *per curiam* (App. S).

The Court finds that Petitioner is not entitled to relief on this claim. Although defense counsel made a comment at sentencing that he may not have made the best closing argument, the Court has reviewed the closing argument and does not find any errors made by defense counsel. Petitioner asserts that counsel failed to make the jury understand the inconsistencies in the evidence. However, the Court disagrees. Defense counsel pointed out numerous inconsistencies in the testimony and evidence. For example, defense counsel noted that although Taylor testified that Petitioner punched, kicked, and "stomped" her, she only had a broken clavicle and a contusion; there was no bruising like there would have been if she had been beaten in the manner she testified (App. C at 243-44). Defense counsel also pointed out that Kurmas and Mills' stories were inconsistent regarding whether Kurmas, Taylor, and Mills were all in Kurmas' vehicle or standing outside when Petitioner followed them to Bosier's house *Id.* at 245-46. Defense counsel argued to the jury that if they looked at pictures of Petitioner's vehicle, there were no dents or indentations that usually occur if one vehicle hits another as suggested by Kurmas, Taylor, and Mills. *Id.* at 246-48. Moreover, defense counsel told to the jury that Petitioner's story that Kurmas' vehicle hit a concrete barrier, which caused Taylor's injuries, was more consistent with the

24

evidence because Kurmas had consumed twelve or more alcoholic beverages earlier in the day. *Id.* at 250.

The record reflects that defense counsel adequately pointed out the inconsistencies in the testimony and evidence. Petitioner has not alleged what additional arguments counsel should have made during closing argument or what specific errors were made that resulted in prejudice. Petitioner has not shown that counsel acted deficiently with regard to this matter, or that any such deficiency resulted in prejudice. The state court's determination of this claim was neither contrary to, nor an unreasonable application of, federal law. Claim eight is denied pursuant to § 2254(d).

## I. Claim Nine

In Petitioner's final claim he argues that the State committed a *Giglio*[7] violation when it failed to correct false witness testimony. Petitioner contends that Taylor testified falsely at Petitioner's bond hearing and at trial (Doc. No. 1 at 27-28). Petitioner points to Taylor's testimony in which she stated that she was hospitalized and unconscious for two days when the record reflects that she was released the same day from the hospital. *Id.* at 28.

Petitioner raised this claim in his Amended Rule 3.850 motion for post-conviction relief (App. N). The trial court denied the claim, stating that the record did not reflect that the victim had testified that she was in a coma or hospitalized (App. O). On rehearing, the trial court stated that although the record reflects that the victim did testify that she was in a coma and hospitalized for two days, there is no indication that a *Giglio* violation occurred because the victim's testimony was not false (App. Q). The court found it was reasonable

---

[7]*Giglio v. United States*, 405 U.S. 150 (1972).

for the victim to state she had been hospitalized for two days when she was admitted on February 18, 2005, and released on February 19, 2005. *Id.* Additionally, the trial court noted that the medical records reflected that the victim was difficult to rouse and barely responded to stimulus, indicating that Taylor was in fact unconscious. *Id.* The Fifth District Court of Appeal affirmed *per curiam* (App. S).

A conviction obtained through the knowing use of perjured testimony is fundamentally unfair and a violation of due process. *United States v. Bagley*, 473 U.S. 667, 677 (1985); *Giglio*, 405 U.S. at 150. A petitioner can establish a violation by showing that "(1) the prosecutor 'knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony,' and (2) there is a reasonable probability that the perjured testimony could have affected the judgment." *United States v. Elso*, 364 F. App'x 595, 599 (11th Cir. 2010) (quoting *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006)). A petition must show that (1) the statements were "actually" false, (2) the statements were material, and (3) the prosecution knew they were false. *Id.* "The use of testimony that is inconsistent with a witness's prior testimony or that of a codefendant does not suffice to show that the proffered testimony was false." *Id.* (citing *Hays v. Alabama*, 85 F.3d 1492, 1499 (11th Cir. 1996) and *United States v. Michael*, 17 F.3d 1383 (11th Cir. 1994)).

Petitioner has not demonstrated that Taylor gave false testimony. First, the testimony Taylor gave at Petitioner's bond hearing has no bearing on his conviction, because that testimony was not considered by the jury. Furthermore, although Taylor testified that she "woke up days later" in the hospital and was unconscious, she also stated on cross examination that she does not recall being at the hospital (App. C at 119, 131).

The hospital records reflect that Taylor was admitted to the hospital on February 18, 2005, and released on February 19, 2005 (App. Q). The Court agrees with the state court that it is not patently false or unreasonable to testify that one was in the hospital for two days when Taylor was in the hospital for two consecutive days, even if she was not hospitalized for a full forty-eight hours. The records also reflect that the nurses found that Taylor could not be roused easily and that she "barely" responded to stimuli, which indicates that Taylor was unconscious most of the time she was hospitalized. *Id.* Because Petitioner has not demonstrated that Taylor's testimony was false, the Court concludes that no *Giglio* violation occurred in this case.

The state court's determination of this claim was not contrary to, nor did it result in an unreasonable application of, clearly established federal law. Accordingly, claim nine is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus filed by Michael P. Gilbrook, Sr. (Doc. No. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of The Court shall enter judgment accordingly.

2.      The Clerk of The Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 30th day of April, 2012.

UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-3 4/30
Michael P. Gilbrook, Sr.
Counsel of Record